UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JANSEN MICHAEL SIMON                          CIVIL ACTION

VERSUS                                        NO. 20-465

TERREBONNE PARISH SHERIFF'S                   SECTION "M"(2)
OFFICE ET AL.

### REPORT AND RECOMMENDATION

Plaintiff, Jansen Michael Simon, was a prisoner in the Terrebonne Parish Criminal Justice Complex in Houma, Louisiana at the time he filed this lawsuit pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 ("Section 1983"). Record Doc. Nos. 1 (Complaint at p. 1); 2-3. He sued the Terrebonne Parish Sheriff's Office and the Terrebonne Parish Sheriff's Office Narcotics Agency. Id.

Simon alleges that on February 10, 2019, he was falsely arrested and imprisoned by Terrebonne Parish Sheriff's Office narcotics agents. Record Doc. Nos. 1 (Complaint at ¶ IV); 6 at p. 7. Plaintiff seeks "the [m]aximum dollar amount allowed for false i[m]prisonment, pain and suffering, and mental anguish for a period of 53 days" during which he was incarcerated. Record Doc. No. 1 (Complaint at ¶ V).

### THE RECORD

In his complaint, plaintiff alleges that the "Terrebonne Parish Sheriff's Office [n]arcotics agents pulled Tyler Lirette and myself . . . over for a [r]outine traffic stop . . . [and] searched the vehicle without [the d]river['s [Lirette's] consent." Record Doc. No. 1(Complaint at ¶ IV). Simon states that the agents "[f]ound [g]laze from a pastry on the [f]loorboard [and] [c]laimed it was crack cocaine and when [Lirette] advised them that the

find was pastry [g]laze and advised [the] narcotics agents to use their field test kit to test it[, the] [n]arcotics agents refused to field test it, [even though they] admitted to knowing their find was <u>NOT</u> narcotics." <u>Id</u>. Simon alleges that the agents said the substance "looked [j]ust enough like [narcotics] that we would have [t]o sit until [the] lab [r]esults came back[,] which [would take] 53 days." <u>Id</u>. (emphasis in original). Simon states that he and "Lirette later discovered [that] the narcotics agents called our names in [f]or warrants 35 minutes prior to [the] stop and followed us." <u>Id.</u>

Plaintiff was given an opportunity to elaborate on his allegations in his written statement of facts, Record Doc. No. 6, which the court considers part of his complaint. In his statement of facts, plaintiff states that he and "Lirette were [t]raveling from a [f]riend's house in the area of Pitre St. in Houma, La [d]own Grand Caillou [Road] to South Van [Road] . . . [before] stopping at Gaubert's Gas Station for 15-20 min[utes] to play video poker machines located inside a[n] [ad]joining Subway Sandwich[] shop." Record Doc. No. 6 at p. 7. Plaintiff alleges that "[u]pon [l]eaving Gaubert's [t]raveling towards another friend[']s house on Hwy 315 . . . we were pulled over by Terrebonne Parish Sheriff's Office narcotics agents in an unmarked 4[-]door [D]odge pickup truck." <u>Id</u>. Simon states that "upon  [the] inital stop[,] . . . Lirette stated that the vehicle and all of its contents <u>whether legal or illegal</u> belonged to him [and] he had only given . . . Simon . . . a ride to go get a phone." <u>Id</u>. (emphasis added). Plaintiff alleges that the agents "then found what was glaze from a pastry that had fallen on the driver[']s side floorboard when being eaten by . . . Lirette. . . . [but the] [o]fficers refused to use [a] [f]ield test kit provided to them by the State to [i]dentify [the]

-2-

[s]uspected [n]arcotics [and told Simon and Lirette that they] knew the process and . . . would have to 'sit it out.'" Id.  Plaintiff states that he and Lirette were released "two months later . . . [after the] [c]harges were completely dissolved. . . due to [the] [c]rime lab results coming back 0.000% illegal narcotics." Id.

As part of the screening process required by 28 U.S.C. § 1915A(a), the court obtained records of the related state court criminal proceedings from defense counsel. The records contain an initial narrative report by Terrebonne Parish Sheriff's Office Narcotics Agent Scott Robinson stating that on February 11, 2019, at about 10:17 p.m., plaintiff and Lirette were pulled over for a traffic violation when the vehicle was driven over "the center line and the fog line on the edge of the roadway." Record Doc. No. 7 at p. 47. According to the report, the agents asked plaintiff and Lirette to exit the vehicle "for officer safety due to the placement of vehicle on the road." Id. Agent Robinson then performed a pat-down "for officer safety" of plaintiff and Lirette and discovered a "hard object [in] the rear pocket of [Lirette's pants]." Id. Upon permission from Lirette, Robinson removed the object, which was determined to be a digital scale with suspected drug residue. Id. Robinson notes in the report that Simon and Lirette denied possession of any other contraband in the vehicle. Record Doc. No. 7 at p. 47. Nevertheless, based on finding the digital scale, the agents searched the vehicle and discovered (1) a plastic bag containing what they suspected was heroin; (2) a syringe; (3) two serving spoons, which Robinson states are commonly used for measuring controlled dangerous substances, on the driver's seat in a black case; (4) a counterfeit $100 bill on the passenger seat and (5) two pieces of suspected crack cocaine on

the driver's side floorboard. Id. Lirette was arrested for violations of La. Rev. Stat. §§ 40:966 (possession of heroin); 32:79 (improper lane usage); 14:72.2 (monetary instrument abuse); 40:967 (possession of crack cocaine) and 40:1023(C) (possession of drug paraphernalia). Simon was arrested for violations of La. Rev. Stat. §§ 40:966 (possession of heroin); 14:72.2 (monetary instrument abuse); 40:967 (possession of crack cocaine) and 40:1023(C) (possession of drug paraphernalia). Id.

The state court records contain an affidavit from Lirette, in which he states that "all the drugs and Paraphenellia (sic) and other charges was (sic) for me not [Simon]." Record Doc. No. 7 at p. 7. Lirette attests that "on [February 11, 2019,] I gave [Simon] a ride to go pickup (sic) his sim card for his phone when we were stopped." Id.

The state court records also contain a printout summary of Simon's criminal record, which indicates that he is a felon and that between September 16, 2006 and January 24, 2019, he was arrested numerous times and charged with a variety of crimes, including but not limited to two counts of failure to appear, disturbing the peace, possession of or dealing in firearms with an obliterated number or mark and illegal carrying of weapons on September 16, 2006; four counts of failure to appear and four counts of contempt of court on May 16, 2007; aggravated burglary on January 16, 2009; forgery on September 17, 2009; illegal carrying of weapons, possession of a firearm by convicted felon, failure to appear and producing, manufacturing, distributing, dispensing or possessing a Schedule I controlled dangerous substance, on October 29, 2011; failure to appear on November 8, 2011, March 21 and September 10, 2012; domestic abuse battery on December 15, 2012; possession of

-4-

Schedule II controlled dangerous substance and drug paraphernalia on May 5, 2015; producing, manufacturing, distributing, dispensing or possessing a Schedule I controlled dangerous substance, monetary instrument abuse and illegal possession of stolen things on May 17, 2016; switching a license plate and possession of drug paraphernalia on June 1, 2016; aggravated second degree battery, direct contempt and simple battery on July 16, 2017; criminal trespass, resisting an officer, failure to appear, possession of drug paraphernalia, manufacturing, distribution or possession of Schedule I controlled dangerous substance (marijuana) and taking contraband to or from a penal institution on August 31, 2017; aggravated second degree battery on November 8, 2017 and simple criminal damage to property on March 18, 2018. Record Doc. No. 7 at pp. 25-31. These records also demonstrate that Simon was found or pled guilty to several of these offenses, including, but not limited to, simple burglary on May 7, 2009, to which he was ultimately sentenced to two years' supervised probation on May 13, 2009, id. at p. 30; possession with intent to distribute Schedule II controlled dangerous substances on May 5, 2015, to which he was sentenced to three years in prison but released and placed on probation on February 16, 2016, id.; and possession of a Schedule I controlled dangerous substance on May 24, 2016, which was a violation of his probation and for which his probation was revoked. Id.

The state court records show that on February 12, 2019, plaintiff appeared before the criminal magistrate judge, who found probable cause as to the above charges and set a bond of $25,000. Record Doc. No. 7 at pp. 70-71. The records reflect that the magistrate judge, in making this finding, noted that he relied on a "report," presumably, the report of Agent

Robinson summarized above. Id. Simon's defense counsel filed motions (1) for a Bill of Particulars, (2) for Discovery and Inspection, (3) for Production of Initial Report, (4) Reserving Right to File a Motion to Suppress After Discovery, (5) for Production of Warrants and Supporting Affidavits, (6) for Production of the Report of the Crime Scene Examinations and for the Reports and Underlying Data of Scientific Examinations, and (7) for a Preliminary Examination. Id. at pp. 12-18. Thereafter, the state court district judge ordered the prosecutor either to respond to defense counsel's motions or to show cause why the motions should not be granted and scheduled a show cause hearing and preliminary examination on May 22, 2019. Id. at pp. 19-20.

On March 14, 2019, the prosecutor advised that he was pursuing only the charges of (1) Possession of a Schedule II Controlled Dangerous Substance (Cocaine) and (2) Possession of Heroin against Simon. Id. at p. 10. That same date, the district attorney filed a bill of information against Simon making those charges. Id. at p. 8. On March 18, 2019, the Louisiana State Police Crime Laboratory released its report on the suspected cocaine and heroin seized from Lirette's car. Id. at p. 7. The report notes that on March 11, 2019, at 11:00 a.m., Louisiana State Police Crime Laboratory Technician Marja Porteous received from Terrebonne Parish Sheriff's Office representative Edgar Authement, Jr. the following evidence: (1) "[o]ne . . . sealed clear plastic evidence bag containing one . . . blue plastic ziplock bag containing a powder substance;" and (2) "[o]ne . . . sealed clear plastic evidence bag containing one . . . clear plastic bag containing a rock-like substance." Id. The report concluded that, after testing was completed on March 18, 2019, "[n]o controlled dangerous

substances were detected in" either piece of evidence. Id. Thereafter, on March 26, 2019, the district attorney filed a motion to nolle prosequi the charges on the basis of "negative scientific analysis findings." Record Doc. No. 7 at pp. 2-6.

## **ANALYSIS**

### I.    STANDARDS OF REVIEW

A prisoner's pro se complaint for alleged civil rights violations must be screened by the court as soon as practicable after docketing, regardless whether it has also been filed in forma pauperis. 28 U.S.C. § 1915A(a); Lewis v. Estes, 242 F.3d 375, 2000 WL 1673382, at *1 (8th Cir. 2006); Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004); Martin v. Scott, 156 F.3d 578, 579–80 (5th Cir. 1998). Such complaints by prisoners must be dismissed upon review if they are frivolous or fail to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); Shakur, 391 F.3d at 113; Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias

v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'" Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint must be dismissed as legally frivolous and/or for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1). Plaintiff's claims are legally frivolous and fail to state a claim even under the broadest reading.[1]

## II.    FALSE ARREST AND IMPRISONMENT CLAIMS

Simon claims that he was falsely arrested and imprisoned in violation of his constitutional rights. To succeed on a claim of false arrest in violation of either the Fourth

---

[1] The court must "liberally construe briefs of pro se litigants and apply less stringent standards to parties proceeding pro se than to parties represented by counsel," Smith v. Lonestar Constr., Inc., 452 F. App'x 475, 476 (5th Cir. 2011), cert. denied, 132 S. Ct. 1746 (2012) (quotation omitted); Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994), and I have done so in this case.

Amendment or under state law, plaintiffs must establish that defendants did not have probable cause to make an arrest. "Probable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" Lincoln v. Turner, 874 F.3d 833, 842 (5th Cir. 2017) (citing Haggerty v. Texas S. Univ., 391 F.3d 653, 655–56 (5th Cir. 2004) (quoting Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001))). Under state law, "[p]robable cause to arrest exists when the facts and circumstances known to the arresting officer, and of which he has reasonable and trustworthy information, are sufficient to justify a man of ordinary caution in the belief that the accused has committed an offense." State v. Surtain, 31 So. 3d 1037, 1043 (La. 2010) (citing State v. Parker, 931 So.2d 353, 355 (La. 2006); State v. Ceaser, 859 So.2d 639, 644 (La. 2003)).

A false imprisonment claim under federal law "is based upon 'detention without legal process.'" Winfrey v. Rogers, 901 F.3d 483, 492 (5th Cir. 2018), cert. denied sub nom., Johnson v. Winfrey, 139 S. Ct. 1549 (2019) (quoting Wallace v. Kato, 549 U.S. 384, 389 (2007)). Thus, "claims of . . . false imprisonment . . . rely on the absence of probable cause." Goldman v. Williams, 101 F. Supp. 3d 620, 648 (S.D. Tex. 2015) (citing Haggerty, 391 F.3d at 655–56; Brown v. Lyford, 243 F.3d 185, 189 (5th Cir.2001)).

Under Louisiana law, " . . . the tort of false imprisonment . . . occurs when one arrests and restrains another against his will and without statutory authority." Kennedy v. Sheriff of E. Baton Rouge, 935 So. 2d 669, 690 (La. 2006) (citing Kyle v. City of New Orleans, 353 So.2d 969 (La.1977)); accord Cook v. Am. Gateway Bank, 49 So. 3d 23, 36 (La. App. 1st

Cir. 2010)). "The tort of false imprisonment consists of the following two essential elements: (1) detention of the person; and (2) the unlawfulness of the detention." Id. (citing Tabora v. City of Kenner, 650 So.2d 319, 322 (La. App. 5th Cir. 1995), writ denied, 651 So.2d 843 (La.1995). "Thus, if an arrest is made either without any legal process or warrant, or under a warrant void and null upon its face, a false imprisonment has occurred." Herrera v. First Nat. Ins. Co. of Am., 194 So. 3d 807, 813 (La. App. 1st Cir. 2016), writ denied sub nom., Herrera v. First Nat'l Ins. Co. of Am., 208 So. 3d 885  (La. 2016) (citing O'Conner v. Hammond Police Department, 439 So.2d 558, 560 (La. App. 1st Cir.1983)).

"Under existing case law, '[a]n action is "reasonable" under the Fourth Amendment, regardless of the individual officer's state of mind, "as long as the circumstances, viewed objectively, justify [the] action."'" United States v. Toussaint, 838 F.3d 503, 508 (5th Cir. 2016) (quoting Brigham City, Utah v. Stuart, 547 U.S. 398, 404 (2006) (quoting Scott v. United States, 436 U.S. 128, 138 (1978))). "We measure reasonableness 'in objective terms by examining the totality of the circumstances.'" Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 844 (5th Cir. 2009) (quoting Ohio v. Robinette, 519 U.S. 33, 39 (1996)).

In the Fifth Circuit, a court's "determination concerning probable cause is guided by the Supreme Court's mandate in Illinois v. Gates: We look to the totality of the circumstances to determine whether probable cause, or in this case arguable probable cause, existed.  We are mindful of the notion that 'probable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules.'" Mendenhall v. Riser, 213 F.3d 226, 231 (5th Cir. 2000)

(citations omitted); accord United States v. Banuelos-Romero, 597 F.3d 763, 767 (5th Cir. 2010); Kohler v. Englade, 470 F.3d 1104, 1109 (5th Cir. 2006) (citing Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).  A later dismissal of charges, or even a subsequent failure of a court to find probable cause, is not determinative.  "The law charges us with determining the reasonableness of the actions taken in light of the cause that existed at the time of arrest . . . . 'whether [an] arrest [is] constitutionally valid depends in turn upon whether, at the moment the arrest was made, the officers had probable cause to make it – whether at that moment the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'"  Id. at 231 (citations omitted) (emphasis in original); accord Freeman v. Gore, 483 F.3d 404, 414 (5th Cir. 2007) (citing Devenpeck v. Alford, 543 U.S. 146, 152 (2004)) ("Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.").

Moreover, in the Fifth Circuit, "[o]ur case law, following the Supreme Court, makes clear that probable cause to search is no different than probable cause to arrest." Id. at 235; accord United States v. Green, 2010 WL 11531162, at *3 (W.D. Tex. Nov. 4, 2010), aff'd, 455 F. App'x 469 (5th Cir. 2011).

In the instant case, Terrebonne Parish narcotics agents had ample probable cause to arrest and detain Simon and to search the vehicle in which he was riding. In his complaint, plaintiff alleges that the narcotics agents "called in" his and Lirette's names before they were

detained. Record Doc. No. 1 (Complaint at ¶ IV). Assuming the truth of plaintiff's allegation, if the agents called in their names and obtained their criminal records, they would have noted that Simon has an extensive record of past offenses, many of which are drug-related. Record Doc. No. 7 at pp. 25-31. Though by no means determinative, if the officers called in Simon's name and learned of his past criminal record, their knowledge of his record, taken together with the other circumstances, would militate in favor of the officers having probable cause to arrest. See Kohler, 470 F.3d at 1111 (". . . the use of prior arrests and convictions can be helpful in establishing probable cause, especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover . . . .") (citing Greenstreet v. County of San Bernardino, 41 F.3d 1306, 1309 (9th Cir.1994)); State v. Clement, 101 So. 3d 460, 470 (La. App. 5th Cir. 2012), writ denied, 110 So. 3d 139 (La. 2013) (". . . actual knowledge that [defendant] has committed particular offenses may apparently be considered to establish probable cause.") (citing La. Crim. Trial Prac. (4th Ed.), § 4.6, p. 55 (available on Westlaw)) (other citations omitted); Beck v. State of Ohio, 379 U.S. 89, 97 (1964) ("We do not hold that the officer's knowledge of the petitioner's . . . previous record was either inadmissible or entirely irrelevant upon the issue of probable cause."); Hardiman v. Ford, 41 F.3d 1510 (7th Cir. 1994) (". . . a suspect's criminal history is a legitimate factor in a probable cause determination. . . .").

Additionally, plaintiff alleges that after they were stopped, Lirette told the agents that the car and its contents, "whether legal or illegal," belonged to him. Record Doc. No. 6 at p. 7 (emphasis added). This suspicious statement alluding to "illegal" contents was

accompanied by the finding of drug paraphernalia on Lirette's person, which led to the search of the vehicle and the discovery of counterfeit currency, a bag of what looked like heroin, suspected cocaine on the floorboard and other drug paraphernalia. The state court record contains the magistrate judge's check-marked finding that the agents had probable cause to arrest Simon, for which he apparently relied on Agent Robinson's report. Additionally, the district attorney charged Simon by bill of information. In Louisiana, a criminal defendant may be formally charged either by bill of information or indictment by a grand jury. La. Code Crim. Proc. art. 382.  If the defendant is indicted, "[o]nce a valid indictment is returned by a grand jury, the existence of probable cause is conclusively presumed . . . ." State v. Moore, 134 So. 3d 1265, 1273 n. 11 (La. App. 2d Cir. 2014), writ denied, 151 So. 3d 598 (La. 2014) (citing State v. Holmes, 388 So.2d 722, 724 (La.1980); La. Code Crim. Proc. art. 296).  But "[i]n felony cases where an indictment has not been issued, a defendant has both a constitutional and a statutory right to a preliminary examination." Id. (citing La. Const. Ann. art. I, § 14; La. Code Crim. Proc. art. 292). "The primary function of the preliminary examination is to insure that probable cause exists to hold the accused in custody or under bond obligation." Id. (citing Holmes, 388 So.2d at 724 (La.1980)). In this case, Simon was charged with felony offenses, had a right to and in fact moved for a preliminary examination, Record Doc. No. 7 at pp. 17-18, which was thereafter set for May 22, 2019. Id. at pp. 19-20. Accordingly, it follows that the district attorney obviously concluded, based on the circumstances surrounding the arrest, that there was probable cause to charge plaintiff with

the stated offenses and that the pursuit of such charges would withstand the preliminary examination.

In his complaint, Simon challenges the constitutionality of his arrest and subsequent detention by making several allegations that, broadly construed, assert that the agents lacked probable cause. First, he alleges that the agents searched the vehicle without consent. Record Doc. No. 1 (Complaint at IV). However, Simon, as the passenger, lacks standing to complain about the agents' search of Lirette's vehicle or its contents, which he admits did not belong to him and in which he thus had no property interest. United States v. Dent, 258 F. App'x 626, 628–29 (5th Cir. 2007) (citing United States v. Roberson, 6 F.3d 1088, 1093 (5th Cir.1993)). Even if Simon had standing to contest the legality of the vehicle search, the constitutionally valid traffic stop and pat-down gave the agents probable cause to search the vehicle.

As to the traffic stop,

The Fourth Amendment protects the right of individuals to be free from unreasonable seizure. See U.S. Const. amend. IV. Stopping a vehicle and detaining its occupants constitutes a "seizure" within the meaning of the Fourth Amendment. Brendlin v. California, 551 U.S. 249, 255–56 (2007). Whether such a seizure is constitutionally permissible is determined under the "reasonable suspicion" standard set forth in Terry v. Ohio, 392 U.S. 1 (1968). See United States v. Lopez–Moreno, 420 F.3d 420, 430 (5th Cir. 2005) ("For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle.").

Atwood v. Tullos, 312 F. Supp. 3d 553, 560–61 (S.D. Miss. 2018). Though not necessary, a stop may also be justified when police have probable cause to believe that a traffic violation

-14-

has occurred. <u>Whren v. United States</u>, 517 U.S. 806, 810 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.") (citing <u>Delaware v. Prouse</u>, 440 U.S. 648, 659 (1979); <u>Pennsylvania v. Mimms</u>, 434 U.S. 106, 109 (1977) (per curiam)). Under Louisiana law, Lirette's driving was in violation of La. Rev. Stat. § 32:79, which provides: "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules, in addition to all others consistent herewith, shall apply[:] (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety. . . ." Agent Robinson's report notes that the agents witnessed Lirette drive his vehicle over the fog line and center line in direct violation of this statute. Thus, the officers had probable cause to believe that Lirette had violated the above statute and the stop was justified.

As to the pat-down, the Supreme Court has held that "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." <u>Mimms</u>, 434 U.S. at 111, n.6. "The government's 'legitimate and weighty' interest in officer safety . . . outweighs the '<u>de minimis</u>' additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle." <u>Arizona v. Johnson</u>, 555 U.S. 323, 331–32 (2009) (quoting <u>Mimms</u>, 434 U.S. at 110–111). "[T]he [<u>Mimms</u>] Court further held that a driver, once outside the stopped vehicle, may be patted down for weapons if the officer reasonably concludes that the driver "might be armed and presently dangerous." <u>Id</u>. (quoting

Mimms 434 U.S. at 112.). The rule articulated in Mimms applies equally to passengers. Id.

Based on this precedent, the narcotics agents were justified in asking Lirette and Simon to

exit the vehicle. Agent Robinson notes in his report that there was danger to the agents based

on where the vehicle was on the road. Record Doc. No. 7 at p. 47. Further, the narcotics

agents could have reasonably concluded that, at the time of the stop, Lirette and/or Simon

may be armed or otherwise dangerous. "For purposes of a Terry pat-down, '[t]he officer need

not be absolutely certain that the individual is armed; the issue is whether a reasonably

prudent man in the circumstances would be warranted in the belief that his safety or that of

others was in danger.'" United States v. Brown, 209 F. App'x 450, 452 (5th Cir. 2006)

(quoting Terry, 392 U.S. at 21-22). Robinson's report explicitly states that he performed the

pat-down "for officer safety," indicating a contemporaneous belief that the individuals may

have presented a danger to the officers. Record Doc. No. 7 at p. 47.

Examining the totality of the circumstances, the agents had probable cause to search

the vehicle. The discovery of suspected drug paraphernalia containing suspected drug residue

following the pat-down gave the officers probable cause to search the vehicle for drugs.

See United States v. Richmond, 915 F.3d 352, 359 (5th Cir. 2019) (citing Maryland v.

Dyson, 527 U.S. 465, 467 (1999)) ("Probable cause to believe a vehicle contains contraband

allows a warrantless search because of the car's mobility."). Additionally, according to

plaintiff's own statement of facts, "upon [the] initial stop . . . ," Lirette told the officers that

"the vehicle and all of its contents whether legal or illegal belonged to him . . . ," Record

Doc. No. 6 at p. 7, which, combined with the discovery of the drug paraphernalia and other

circumstances described above, gave the officers ample probable cause that there may be other contraband in the vehicle. Because the agents had probable cause to search the vehicle for drugs or drug paraphernalia, the scope of their search lawfully extended to such items that may be found; in this case, the black case on the driver's seat. See United States v. Ross, 456 U.S. 798, 820–21 (1982) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.").

In his statement of facts, Simon alleged that the officers "stat[ed] they knew [the substance on the floor] wasn't illegal narcotics." Record Doc. No. 6 at p. 7. However, in his complaint, plaintiff stated that the narcotics agents "admitted to knowing their find was not narcotics but it looked just enough like it that [Simon and Lirette] would have to sit until [the] lab results came back which was 53 days. . . ." Record Doc. No. 1 (Complaint at IV) (emphasis added). Even assuming, as I must, that plaintiff is accurately representing the officers' statements, the statements nevertheless reflect the agents' reasonable suspicion that the substance may in fact have been narcotics. The suspected cocaine, a white powdery substance on the car floor, was not the only item found in the agents' search that resulted in Simon's arrest. The agents also discovered a suspected bag of heroin, other drug paraphernalia and counterfeit currency. Regardless of the agents' alleged statements about the suspected cocaine, based on the other items found, the agents had probable cause to arrest in these circumstances.

Plaintiff also alleges that the "[o]fficers refused to use [a] [f]ield test kit provided to them by the State to [i]dentify [s]uspected [n]arcotics." Record Doc. No. 6 at p. 7; Record Doc. No. 1 (Complaint at ¶ IV). The Fifth Circuit and several district courts have found that police may have probable cause to believe a substance is an illegal narcotic despite the absence of a field test. United States v. Delacruz, 452 F. App'x 461, 462 (5th Cir. 2011) (finding that, even in the absence of a field test, totality of circumstances revealed that officers had probable cause to believe substance was marijuana) (citing United States v. Fisher, 22 F.3d 574, 578 (5th Cir.1994)); Waltman v. Payne, 535 F.3d 342, 347–48 (5th Cir.2008) (concluding that probable cause existed to believe substance was marijuana, even where field test was negative, based on officers' drug training and experience and knowledge that test was unreliable on fresh marijuana plants)); United States v. Neria, 2014 WL 1386342, at *4 (N.D. Tex. Apr. 9, 2014), aff'd, 628 F. App'x 256 (5th Cir. 2015) ("the fact that the officers did not confirm their initial determination through field testing does not negate the fact that they had probable cause the moment they observed the bag with the white residue") (citing United States v. Satterwhite, 980 F.2d 317, 321 n. 5 (5th Cir.1992) ("Determining probable cause does not require certainty, but only a probability that contraband or evidence is located in a certain place."). Based on the totality of the circumstances, the officers had probable cause to believe the items found were narcotics despite the lack of a field test.

Additionally, although plaintiff asserts that Lirette told the officers that the car and everything in it belonged to him, Record Doc. No. 6 at p. 7, the agents may reasonably have

believed that Lirette was lying. Even if the agents believed Lirette, they may have reasonably construed Simon's presence in the vehicle that night and access to the suspected illegal narcotics as constructive or joint possession under Louisiana law. "A person may be in constructive possession of a drug even though it is not in his physical custody, if it is subject to his dominion and control. Also, a person may be deemed to be in joint possession of a drug which is in the physical custody of a companion, if he willfully and knowingly shares with the other the right to control it. . . . Guilty knowledge is an essential ingredient of the crime of unlawful possession of an illegal drug...." State v. Johnson,  21 So.3d 1159, 1162 (La. App. 3d Cir. 2009), writ denied, 36 So.3d 230 (La. 2010) (quoting State v. Toups, 833 So.2d 910, 913 (La. 2002)) (other citations omitted). While "it is well settled that the mere presence in an area where drugs are located or the mere association with one possessing drugs does not constitute constructive possession," State v. Harris, 647 So.2d 337, 338 (La.1994) (quoting State v. Walker, 369 So.2d 1345, 1346 (La.1979)), "[a] determination of whether there is 'possession' sufficient to convict depends on the peculiar facts of each case. Factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession include his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs." Toups, 833 So. 2d at 913 (citing State v. Hughes, 587 So.2d 31, 43 (La. App. 2d Cir.1991), writ denied, 590 So.2d 1197 (La.1992); Bujol v. Cain, 713 F.2d 112, 115 n. 6 (5th

Cir.1983), <u>cert. denied</u>, 464 U.S. 1049 (1984) (listing above factors as well as a sixth factor: "evidence that the area was frequented by drug users")).

In his written submissions, Simon states that he was in the passenger seat of the vehicle, and thus he had ready access to the suspected narcotics and paraphernalia found in the car. In the incident report, Agent Robinson noted that the agents found what they believed to be cocaine on the driver's side floorboard, which could be reasonably interpreted as evidence of recent drug use. Thus, Lirette's alleged statement does not affect the fact that the agents had probable cause to arrest plaintiff in these circumstances.

Under these circumstances, it is clear that the police officers had ample probable cause <u>at the time of the arrest</u> to arrest plaintiff.  The law is clear that the subsequent dismissal of the charges against Simon does not vitiate the existence of probable cause at the time of the search and arrest. Under these circumstances, plaintiff's false arrest and false imprisonment claims must be dismissed as legally frivolous and/or for failure to state a claim.

III.    <u>IMPROPER DEFENDANTS: SHERIFF'S OFFICE AND NARCOTICS AGENCY</u>

Simon has named the Terrebonne Parish Sheriff's Office and the Terrebonne Parish Sheriff's Office Narcotics Agency, a division of the Sheriff's Office, as defendants. However, the Sheriff's Office and its Narcotics Agency are not legal entities with the capacity either to sue or to be sued.  Section 1983 claims may be asserted only against "persons" as the statute and case law define that term. The Terrebonne Parish Sheriff's Office and the Terrebonne Parish Sheriff's Office Narcotics Agency are not properly named defendants because they are not juridical entities under state law capable of being sued and/or

-20-

because they are not persons for purposes of suit under Section 1983. <u>Martin v. Davis</u>, 2007 WL 763653, at *2 (E.D. La. Mar. 8, 2007) (Berrigan, C.J.) (citing La. Rev. Stat. § 33:361; <u>Causey v. Parish of Tangipahoa</u>, 167 F. Supp. 2d 898, 909 (E.D. La. 2001); <u>Manley v. State</u>, 2001 WL 506175, at *2 (E.D. La. May 11, 2001); <u>Norwood v. City of Hammond</u>, 1999 WL 777713, at *3 (E.D. La. 1999); <u>Boudreaux v. Bourgeois</u>, 1999 WL 804080, at *3 (E.D. La. 1999); <u>Dugas v. City of Breaux Bridge</u>, 757 So. 2d 741, 744 (La. App. 3d Cir. 2000)); <u>accord Hicks v. Page</u>, 2010 WL 2243584 (W.D. La. Feb. 26, 2010); <u>Ruggiero v. Litchfield</u>, 700 F. Supp. 863, 865 (M.D. La. 1988). "The State of Louisiana grants no such legal status to any law enforcement office or department." <u>Green v. New Orleans Police Dep't</u>, 2013 WL 5739076, at *3 (E.D. La. Oct. 22, 2013) (citing <u>Liberty Mut. Ins. Co. v. Grant Parish Sheriff's Dep't</u>, 350 So.2d 236 (La. App. 3d Cir.1977), <u>writ refused</u>, 352 So.2d 235 (La.1977), <u>overruled on other grounds by</u> <u>Jenkins v. Jefferson Parish Sheriff's Office</u>, 402 So.2d 669 (La.1981).

 As detailed above, plaintiff fails to state a claim upon which relief can be granted. Thus, even if plaintiff was given an opportunity to seek leave to amend his complaint to add claims against individuals who could be sued, such as any of the individual narcotics agents involved in his arrest and detention, his claims against these individuals would be futile. <u>See Stripling v. Jordan Prod. Co., LLC</u>, 234 F.3d 863, 872-73 (5th Cir. 2000) ("<u>It is within the district court's discretion to deny a motion to amend if it is futile</u>. While this court has not specifically defined "futility" in this context, we join our sister circuits that have interpreted it to mean that the amended complaint would fail to state a claim upon which relief could be

granted.  As these courts have done, to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6).") (quotations and citations omitted).

## RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[2]

New Orleans, Louisiana, this _____16th_____ day of April, 2020.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[2]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

-22-